Andrew McClain, J.,
delivered the opinion of the Court.
Jacob Steinkuhl rented or leased from James Wicker-sham a store-room, with back room attached, in Memphis, at $100 per month, for one year.
During this time, James Wickersham died, having received the rents due and owing while he lived. After his death, Steinkuhl continued in the use of the rooms at the same rate, during, and after the year expired. Hardin claimed that, by a contract with Wickersham in his life-time, the rents accrued after his death, belonged to him.
E. W. Wickersham, as the agent of the heirs of James Wickersham however disputes this, and obtained several judgments amounting to $500, before a Justice of the Peace, for the monthly rents. Hardin also brought suit for the same rents. Steinkuhl filed his bill of interpleader in the Chancery Court, praying that it might be determined to whom the rents belonged, and proposed to pay the money into court, and obtained an injunction restraining the collection of the judgments before the Justice.
Steinkuhl failed to pay this money into Court, and a decree was pronounced in favor of C. & M., for the rents due, and to become due. The decree was for $500, against Steinkuhl and his surety on his injunction bond, and for the balance accrued and to accrue against Stein-kuhl alone.
This decree was rendered at a special term of the Chancery Court, commencing the fifth Monday in Sep *378 tember, 1867. The regular term next preceding, commenced on the second Monday in May, 1867.
Executions on these decrees were issued, bearing test on the second Monday in May, 1867, one against Stein-kuhl and his surety, for $500, the other against Steinkuhl alone, for $800.
These executions were levied on Steinkuhl’s stock of liquors, etc., and returns made, stating that sales were not made for want of time. On the $500 execution was this indorsement:—
^“This fi.fa. is entitled to a credit of $325.”
Alias executions issued, and on the $500 alias execution was this endorsement:—
“ January 17, ’68. Received of S. D. Langston, D. S., nine hundred ninety-seven and dollars, which is in full satisfaction of the within fi. fa., No. 1030, including debt, interest and cost.
A. Alston, C. & M.,

By B. J. Black, B. G. & MB

On the $800 alias execution is this endorsement:
“ December 20. This fi. fa. is returned, satisfied in full, and the amount herein to be paid over to the C. & M., and No. 1029, herewith returned.
“P. M. Winters, Sheriff.”

“8. O. Sangslon.”

The $500 execution was No. 1029, and the $800 execution was No.. 1030. In the meantime, viz.: on the 13th of November, 1867, an execution issued from the Circuit Court of the United States for the District of West Tennessee, in favor of Schaller & Gerke against Jacob Steinkuhl, for five thousand seven hundred and *379 thirty-four dollars and fifteen cents, besides costs, hearing test first Monday in September, 1867.
This execution was levied November 13th, 1867, on the same stock of liquors on which the $500 and $800 executions had been levied.
The present controversy relates to the fund in the hands of the C. & M. The Chancellor held that Schaller & Gerke had the superior lien under their execution from the Circuit Court of the United States, bearing test on the first Monday in September; that the executions from the Chancery Court of $500 and $800, were improperly tested on the second Monday in May, 1867, and should have been tested on the fifth Monday in September, the first day of the special term at which the decree on which they were predicated, was rendered, and that this fund should therefore be applied to the satisfaction of the execution of Schaller & Gerke.
The ruling of the Chancellor in relation to the test of the $500 and $800 executions, was unquestionably correct.
To hold that an execution should bear test of a term preceding the term at which the judgment was rendered, although such term be a special term, would be contrary to all the analogies of the law. To award an execution is a judicial act, and not a ministerial one. In England the execution is by order of Court, with us it is by virtue of the judgment which awards the execution: 1 Meigs' Digest, 303; Johnson vs. Ball, 1 Yer., 292.
In England, if an execution was returned not satisfied, the Court would award another, and this being a judicial act, done in open Court, relates to the first day *380 of the term. With us, if our execution is returned not satisfied, the judgment awards an alias, which bears test from the first day of the term preceding its issuance: 9 Yer., 442.
So with us, the execution is founded upon, grows out of, and [is awarded by the judgments; and hence, to say it can bear test at a time which is prior to the term of Court at which it was rendered, is absurd. It may bear test the first day of the term at which it was rendered, when in point of fact it may not have been rendered on the first day, but on some subsequent day of the term. But this grows out of the fiction of law that the entire term is but one day.
But all this is a matter of no importance in the present controversy. We have already stated that the levy of the executions of $500 and $800 from the Chancery Court, were prior in point of time, to the levy of the execution of Schaller & Gerke from the United States Circuit Court.
When executions are issued against the same person, one from a State court, and the other from a court of the United States, the execution which is first levied, is to be satisfied first.
This question has been several times before the Supreme Court of the United States, and it was uniformly held as we have indicated.
In the case of Pulliam vs. Osborne, which originated in the State of Alabama, Mr. Justice Campbell said:
“The lien of an execution, under the laws of that State, (Alabama,) commences from the delivery of the writ to the sheriff; and the lien in the courts of the *381 United States depends upon the delivery of the writ to their officer. But no provision is made by the statutes of the State, or United States, for the determination of the priorities between the creditors of the respective courts — State and Federal. They merely provide for the settlement of the priorities between creditors prosecuting their claims in the same jurisdiction.
“The demands of their respective creditors, in the present instance, were reduced to judgments; and the officers of either court were invested with authority to seize the property.
“The liens were consequently co-ordinate, or equal; and, in such cases, the tribunal which first acquires possession of the property by the seizure of its officer, may dispose of it so as to vest a title in the purchaser, discharged of the claims of creditors of the same grade:” 17 Howard, 475.
The same principle was enunciated in the case of Hogan vs. Lucas, 10 Peters’ R., 400. See also, Brown vs. Clark, 4 Howard, 4.
The funds in the hands of the Clerk and Master should be applied in satisfaction of the $500 and $800 executions.
The decree of the Chancellor will, therefore, be reversed, and the cause remanded, to be proceeded with according the ruling herein indicated.